UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH GARCIA,

    Plaintiff,

v.

RENAISSANCE GLOBAL LOGISTICS,
LLC, a Michigan limited liability company,
CLYDE HOWARD, in his official capacity
and individually, RON BUTLER, in his
official capacity and individually, and
YVONNE RAYFORD, in her official
capacity and individually,

    Defendants.
_____/

Case No. 10-13122

Honorable Patrick J. Duggan

# OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_December 21, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On August 6, 2010, Ruth Garcia filed this action against Renaissance Global Logistics, LLC ("RGL") and three RGL employees, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Presently before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. The Court heard oral

argument on December 8, 2010, and for the reasons stated below, grants Defendants' Motion in part and denies it in part. Plaintiff filed a Motion to File Supplemental Exhibits on December 13, 2010, and the Court grants this Motion.

## I. Factual and Procedural Background

RGL is an automotive logistics company that packages and ships automotive parts. In April 2006, RGL hired Plaintiff to work as a "Picker Packer." Compl. ¶ 13.[1] This position entails, among other tasks, packing automotive parts for shipment. Defendants claim that Picker Packers are required to lift parts and boxes weighing up to fifty pounds. Defs.' Br. Supp. Mot. 8. Plaintiff contends that while Picker Packers in some departments are required to lift items weighing up to fifty pounds, Picker Packers in other areas, such as the "nonconforming" department, were not required to perform heavy lifting. Compl. ¶ 18. According to Plaintiff, Picker Packers in those areas were not required to lift objects weighing over thirty pounds. Pl.'s Br. 7.

Plaintiff became pregnant around June 2009. She claims that as her pregnancy progressed, supervisors accommodated her condition by assigning her tasks that did not require heavy lifting. Compl. ¶¶ 16-17. Plaintiff claims that she was assigned to the "nonconforming" department in August 2009 by Plant Manager Clyde Howard. *Id.* ¶¶ 17, 20. After a supervisor later tried to reassign her to an area that required heavy lifting, Plaintiff allegedly told Executive Director of Human Resources Ron Butler that she feared

---

[1] Plaintiff filed both her Complaint and a First Amended Complaint on August 6, 2010. Because Plaintiff may amend her pleading once as a matter of course within twenty-one days after serving it, Fed. R. Civ. P. 15(a)(1)(A), the Court refers to the First Amended Complaint simply as the "Complaint."

2

lifting over thirty pounds would impact her pregnancy. *Id.* ¶ 19. Plaintiff claims that the following day, she was approached by Howard, several supervisors, and a union official. *Id.* ¶ 21. Howard allegedly insisted that there were no accommodations for pregnancy, and demanded a doctor's note regarding any restrictions. *Id.* ¶ 22.

Plaintiff provided a doctor's note to Butler, explaining that she "is able to continue her usual work within the following parameters: No lifting > 30 lbs." Pl.'s Br. Ex. 3. Butler informed Howard of Plaintiff's restriction. Howard allegedly insisted that Plaintiff could not work because of the restriction. Compl. ¶ 24.

Yvonne Rayford, a Human Resources executive, allegedly required Plaintiff to take FMLA leave. *Id.* ¶ 25. Plaintiff claims that because she was able to work in departments that did not require heavy lifting, she applied for FMLA leave "under duress and with great reluctance." *Id.* ¶¶ 26-27. RGL granted her a twelve-week FMLA leave beginning on September 17, 2009 and expiring on December 10, 2009. Defs.' Br. Supp. Mot. 8.

On November 6, 2009, while on leave, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR"). Compl. ¶ 27; Pl.'s Br. Ex. 1. She later received a telephone call from Rayford, informing her that her FMLA leave would end in December 2009, and that she should report for work on December 10, 2009. Compl. ¶ 28.

On December 10, 2009, Plaintiff, still pregnant, reported for work. Howard allegedly informed her that there was no work for her, and directed her to leave the premises immediately. *Id.* ¶ 29. Plaintiff spoke with Rayford on December 11, 2009, and claims that Rayford said RGL would only allow her to return to work without restrictions.

3

*Id.* ¶ 31. Rayford told Plaintiff that she could make a written request for six weeks of additional leave, if she did so within the next three or four days. Garcia Dep. 146:13-147:13, Aug. 4, 2010. Plaintiff never requested this leave, and did not return to work. On December 22, 2009, Butler sent Plaintiff a letter terminating her employment effective December 14, due to three consecutive unexcused absences from December 15 through December 18. Defs.' Br. Supp. Mot. Ex. 5. The letter required Plaintiff to contact the Human Resources Office by January 4, 2010 with proof that she had notified the company of her absence, or RGL would "consider this matter closed." *Id.* Plaintiff never contacted RGL regarding this letter. Garcia Dep. 151:5-7.

Plaintiff filed this action on August 6, 2010, alleging that Defendants interfered with her exercise of FMLA rights and retaliated against her for exercising those rights. Plaintiff also alleges racial discrimination under Title VII, asserting that because she is Hispanic, she was treated differently than similarly situated African-American employees. Compl. ¶ 35. She also claims that she was terminated in retaliation for filing a discrimination complaint with the EEOC. Plaintiff seeks damages, attorney's fees, costs, and interest.

## II. Standards of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Plaintiff's FMLA Claims

**A. Interference**

A plaintiff asserting an FMLA interference claim must establish that: (1) she is an

eligible employee; (2) the defendant is an employer under the statute; (3) she was entitled to leave under the FMLA; (4) she gave notice of her intention to take leave; and (5) the employer denied the FMLA benefits to which she was entitled. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). Defendants argue that Plaintiff cannot establish the fifth element, as RGL granted her FMLA request in full. Plaintiff contends that she was denied reinstatement after returning from FMLA leave.

An employee returning from FMLA leave is generally entitled to be reinstated to her previous position or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). This right to reinstatement is the "linchpin" of the interference theory, because "the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends." *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006) (alteration in original) (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005)). If, however, the employee remains unable to perform an "essential function" of her position upon returning from leave, she has no right to reinstatement under the FMLA. *Id.* at 506 (citing 29 C.F.R. § 825.214(b)).

Plaintiff has established a genuine dispute of material fact regarding whether she could perform the essential functions of her position upon returning from leave. Although Defendants claim that Picker Packers are required to lift up to fifty pounds, the position's description specifies no minimum lifting requirement. Defs.' Mot. Ex. 3 at 2. Defendants argue that the Complaint also admits this requirement, but this contention lacks merit. The

7

Complaint states that "lifting bumpers that were approximately 50 pounds" was one of "multiple functions" Plaintiff performed at RGL. Compl. ¶ 14. Plaintiff's admission that she previously performed a task does not elevate that task to an essential function of her position. Defendants also point to Plaintiff's statement that after her coworkers returned from pregnancies, they worked in departments where "lifting up to 50 pounds might be required." *Id.* ¶ 39. This statement mentions a lifting requirement, but confines that requirement to select departments. Plaintiff alleges that other departments required no heavy lifting. *Id.* ¶ 36. Plaintiff argues that heavy lifting was not essential to her job because only Picker Packers in certain departments were required to lift heavy objects. Plaintiff has provided evidence showing that she could "continue her usual work," as long as it did not require lifting more than thirty pounds. Pl.'s Br. Ex. 3. She has established a genuine dispute of material fact regarding whether heavy lifting is an essential function of the Picker Packer job, and whether she could perform the essential functions of the job upon returning from leave. If Plaintiff could have performed the essential functions of her position, she was entitled to reinstatement under the FMLA. Summary judgment on Plaintiff's FMLA interference claim is therefore inappropriate.

**B. Retaliation**

Courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), to FMLA retaliation claims. *Edgar*, 443 F.3d at 508. To establish a prima facie case of retaliation, the plaintiff must show that: (1) she availed herself of a protected right under the FMLA; (2) the employer knew of her exercise of

protected rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between the exercise of FMLA rights and the adverse employment action. *Id.* If the plaintiff satisfies these requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee. *Id.* Defendants appear to dispute only the third and fourth elements of Plaintiff's prima facie case.

Defendants first assert that Plaintiff's termination was not an adverse action because she was unable to perform an essential job function. The Court has already concluded that Plaintiff has established a genuine dispute of material fact regarding this issue. This argument therefore merits no further attention.

Defendants argue that Plaintiff cannot establish a causal connection between protected activity and her termination, and the Court agrees. Plaintiff's only evidence of a causal connection is that her termination occurred soon after she returned from leave, but this purported connection ignores events that are plainly related. Rayford explained on December 11, 2009 that if Plaintiff did not request additional leave within three or four days, she would be terminated. Garcia Dep. 146:13-147:13. Plaintiff's termination letter also warns that failure to respond by January 4, 2010 would result in the matter being "closed." Plaintiff never responded. Garcia Dep. 151:5-7. Plaintiff disregarded two direct warnings that her inaction would result in termination; the Court cannot ignore this conduct. Plaintiff has presented only speculative evidence of causation, and has failed to establish a genuine dispute as to the cause of her termination. She has not established a prima facie case of retaliation under the FMLA. Even if Plaintiff could establish a prima facie case, Defendants have rebutted the presumption of retaliation with evidence showing

9

that Plaintiff's inaction, rather than FMLA activity, caused her termination. Accordingly, the Court concludes that Defendants should be granted summary judgment as to Plaintiff's FMLA retaliation claim.

Plaintiff argues that RGL's reason for termination is a mere pretext, as Defendants refused reinstatement shortly after she filed her complaints with the EEOC and MDCR. Temporal proximity, however, is insufficient to establish that a nondiscriminatory reason for discharging an employee was pretextual. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001).

Plaintiff asserts that the burden-shifting analysis cannot be applied absent discovery, but cites no legal authority for this proposition. Federal Rule of Civil Procedure 56(d) provides that the Court may allow discovery where a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment. Plaintiff has failed to identify any specific reason she requires discovery to oppose Defendants' Motion. Where material facts are not in dispute, discovery would be futile.

## IV. Plaintiff's Title VII Claims

Title VII prohibits an employer's discrimination against individuals based on the characteristics of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiffs may allege "disparate treatment," where the employer treats some people less favorably than others because of these protected characteristics. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S. Ct. 513, 519 (2003). Liability in such a case depends on whether the protected trait actually motivated the employer's decision. *Id.* A plaintiff

10

need not demonstrate that the protected trait was the only factor in the decision; it is sufficient to show that it was "a motivating factor." 42 U.S.C. § 2000e-2(m).

Title VII plaintiffs may use either direct or circumstantial evidence to prove their case. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100, 123 S. Ct. 2148, 2154 (2003). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence, by contrast, is evidence from which the jury may infer discriminatory intent. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Absent direct evidence of discriminatory intent, a plaintiff's claims are subject to a burden-shifting analysis:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824 (1973)) (citations omitted).

**A. Discrimination Claim**

Plaintiff, who is Hispanic, claims that she was terminated after taking FMLA leave, while African-American employees who took FMLA leave were not terminated. She also

claims that pregnant African-American employees were accommodated rather than being forced to take FMLA leave. The Court applies the burden-shifting analysis, because Plaintiff has not presented direct evidence of racial discrimination. To establish a prima facie case of racial discrimination, a plaintiff must show: (1) that she is a member of a protected group; (2) that she was subject to an adverse employment action; (3) that she was qualified for the position from which she was fired; and (4) that she was treated differently than employees outside of the protected class for the same or similar conduct. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 561 (6th Cir. 2004). Defendants contend that Plaintiff cannot establish the fourth element, as she has failed to identify similarly situated employees.

"The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). It is sufficient to demonstrate that the employees are similar in all relevant respects. *Id.* Where medical restrictions are at issue, a plaintiff must show that the proposed comparator employees faced similar restrictions. *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 732 (6th Cir. 2000).

Plaintiff's proposed comparators are distinguishable, as they were able to work without medical restrictions. Plaintiff identified two African-American women, Brandi Collins and Chi-Meka Abernathy-Jones, who were not terminated despite becoming pregnant and using FMLA leave. Plaintiff, however, admitted that she was unsure

whether either woman had medical restrictions of any kind during her pregnancy. Garcia Dep. 120:13-121:6, 130:18-25. Both women have signed affidavits stating that they worked as Picker Packers without restrictions during their pregnancies. *See* Defs.' Mot. Ex. 9. Plaintiff also points to another employee, Marcus Allen, who suffered a hand injury, but she is unaware of any medical restrictions he faced. Garcia Dep. 137:21-25. The Court concludes that Plaintiff has failed to establish the fourth element of her prima facie case, that similarly situated employees outside the protected class were treated more favorably. Defendants must be granted summary judgment on Plaintiff's Title VII discrimination claim.

**B. Retaliation Claim**

Plaintiff claims that her termination on December 22, 2009 constituted retaliation for her filing of an administrative discrimination complaint with the EEOC on November 6, 2009. An employer may not discriminate against an individual because she has opposed an employment practice that is unlawful under Title VII or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) her employer had knowledge of the protected activity; (3) she was subjected to an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Singfield*, 389 F.3d at 563.

Defendants argue that Plaintiff cannot establish the fourth element of her prima facie case, and the Court agrees. RGL warned Plaintiff on December 11, 2009 that her

employment would be permanently terminated if she failed to request additional leave or failed to respond to her termination letter. Plaintiff admits that she took neither of these actions. The Court concludes that Plaintiff has not established a genuine dispute as to the cause of her termination. Even if Plaintiff could establish a prima facie case, Defendants have rebutted the presumption of retaliation with evidence showing that Plaintiff's inaction, rather than protected activity, caused her termination. Defendants should be granted summary judgment as to Plaintiff's Title VII retaliation claim.

## V. Plaintiff's Motion to File Supplemental Exhibits

On December 13, 2010, Plaintiff moved for leave to file supplemental exhibits to her brief opposing summary judgment, including excerpts of several witnesses' depositions. Plaintiff states that these depositions were taken after her response to Defendants' Motion for Summary Judgment was submitted. The Court grants Plaintiff's Motion, but after careful review of the supplemental exhibits, finds that they do not alter the Court's conclusions. The submitted deposition excerpts fail to cure the legal deficiencies of Plaintiff's Title VII and FMLA retaliation claims.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to File Supplemental Exhibits is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's FMLA interference claim;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is

**GRANTED** with respect to Plaintiff's remaining claims.

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:

Lennox Emanuel, Esq.
Glenn D. Oliver, Esq.