UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH GARCIA,

    Plaintiff,

v.

RENAISSANCE GLOBAL LOGISTICS,
LLC, a Michigan corporation,

    Defendant.
_____/

Case No. 10-13122

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 4, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Ruth Garcia ("Plaintiff") filed this lawsuit in response to the termination of her employment by Renaissance Global Logistics, LLC ("RGL"). After a trial in September 2011, the jury found in Plaintiff's favor on her interference claim under the Family and Medical Leave Act of 1993 ("FMLA"). The jury awarded Plaintiff damages of $57,000, and the Court subsequently awarded Plaintiff front pay of $26,000 and prejudgment interest.[1] The Court denied Plaintiff's motion for liquidated damages. This matter is now before the Court on Plaintiff's motion for attorney's fees and costs. Also before the Court

---

[1] The parties had agreed on the record that the Court would determine both the propriety and the amount of any front pay award in the event that Plaintiff prevailed.

is RGL's motion for sanctions. These motions have been fully briefed, and the Court indicated to the parties on January 30, 2012 that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For reasons stated below, the Court denies RGL's motion for sanctions and awards Plaintiff attorney's fees and costs totaling $59,687.26.

## I. RGL's Motion for Sanctions

RGL takes issue with Plaintiff's response to its motion for judgment as a matter of law, or in the alternative, for a new trial. RGL had argued that Plaintiff admitted that upon returning from leave, she could not perform the essential functions of her job without accommodation. Plaintiff, in her response, asserted that the jury could have reasonably concluded that Plaintiff's thirty-pound lifting restriction did not prevent her from performing the essential functions of her job. RGL now requests sanctions, arguing that Plaintiff's response directly contradicts the Complaint's factual allegations.

RGL requests sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority. "Under Rule 11, a court may sanction an attorney who presents court filings for an improper purpose or based on frivolous arguments." *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 854 (6th Cir. 2010). Moreover, "'any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Id.* (quoting 28 U.S.C. § 1927). The Court also has inherent authority to sanction bad-faith conduct in litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 2135 (1991); *Jones*, 617 F.3d

at 854.

In ruling on the motion for judgment as a matter of law or new trial, the Court noted that some evidence supported RGL's position, but agreed with Plaintiff that the jury's verdict was one that could have been reasonably reached:

> Based on the evidence introduced at trial, the jury could have reasonably concluded that the essential functions of Plaintiff's job did not require lifting more than thirty pounds. The jury could have found that Picker Packers often worked in teams to lift heavy items. The jury also could have believed Plaintiff's assertion that as a Picker Packer, she often worked in areas that required little or no lifting. Although the evidence indicated that there were some circumstances under which all Picker Packers in the plant would be assigned to lift heavy parts, the jury could have found that such occurrences were rare. Thus, even though a Picker Packer may occasionally be required to lift more than thirty pounds, the jury could have concluded that heavy lifting was not an essential function of the job. If the jury reached this conclusion, it could have found that Plaintiff was entitled to reinstatement upon returning from leave.
>
> The parties focused their efforts at trial on proving whether Plaintiff could perform the essential functions of her job despite her thirty-pound lifting restriction, and the jury agreed with Plaintiff. Although the Court believes that the jury could also have reasonably reached the opposite conclusion, the relevant inquiry in a motion for a new trial is whether the jury could have reasonably reached the result that it did. Because the jury could have reasonably found that Plaintiff was entitled to reinstatement, the Court concludes that the jury's verdict should not be disturbed, and RGL's motion for a new trial must be denied.

1/17/12 Op. & Order at 5-6. The Court believes that this reasoning requires denial of RGL's request for sanctions. Plaintiff's opposition to the motion for judgment as a matter of law does not rely on a theory of accommodation. Plaintiff argued that the essential functions of her job did not include lifting more than thirty pounds. Based on the evidence presented at trial, the jury could have agreed. Plaintiff's decision to raise this argument does not constitute an act of deception, as RGL contends. The Court therefore concludes

3

that sanctions are not justified, and denies RGL's motion.[2]

## II. Plaintiff's Motion for Attorney's Fees and Costs

Plaintiff has moved for an award of attorney's fees in the amount of $62,192.50 and costs of $2,456.02.[3] RGL has filed a number of objections to the requested award, and the Court shall address these objections below.

### A. Standard of Review

Under the FMLA, a prevailing plaintiff is entitled to recover costs and a reasonable attorney's fee: "The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). "In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). "A reasonable fee is 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed*, 179 F.3d at 471 (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548 (1984)) (alterations in original). "The starting point for determining a reasonable fee is the lodestar, which is the product of

---

[2] The parties have filed two additional motions relating to the timeliness of Plaintiff's response to RGL's motion for sanctions. RGL has moved to strike Plaintiff's response as untimely, arguing that its motion for sanctions should be considered to be unopposed. Plaintiff has moved for an after-the-fact extension of the time to file a response. The Court need not resolve these motions, because regardless of whether a response was filed, the imposition of sanctions is a matter within the Court's discretion. The Court believes that sanctions are not justified in this case.

[3] The Court refers to Plaintiff's "Statement of Legal Services," filed on February 1, 2012, and Plaintiff's "Bill of Costs," filed on March 5, 2012.

the number of hours billed and a reasonable hourly rate." *Gonter*, 510 F.3d at 616 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939 (1983)). The Court may consider a number of other factors in determining whether an increase or decrease from the lodestar is warranted, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Hensley*, 461 U.S. at 434 n.9, 103 S. Ct. at 1940 n.9. The Court should provide a clear and concise explanation of its reasons for the fee award. *Gonter*, 510 F.3d at 616.

**B. Hourly Rate**

RGL objects to the hourly rate of $250 sought by Plaintiff's counsel. "A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum*, 465 U.S. at 895, 104 S. Ct. at 1547). "[T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id.* (citing *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997)).

Plaintiff's counsel argues that an hourly rate of $250 is reasonable, pointing to the State Bar of Michigan's 2010 Economics of Law Practice Report. This report indicates that attorneys with 11 to 15 years of practice experience billed at a median rate of $232 per

hour, with the 75th percentile at $265 per hour. Plaintiff's counsel has indicated that he has approximately 15 years of experience in this area. RGL requests that the Court use the $200 hourly rate specified in a case cited by Plaintiff, *Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778 (E.D. Mich. 2011). Plaintiff is correct, however, in pointing out that *Bell* relied on the State Bar of Michigan's 2007 survey in determining an hourly rate. *Id.* at 783. It is undisputed that Plaintiff's attorney performed the work in this case during 2010 and 2011, and the Court concludes that the $232 median is a fair estimate of the prevailing hourly rate in the Detroit area for the work performed.

**C. Hours Billed**

RGL has raised a number of objections to the hours billed by Plaintiff's counsel. RGL first argues that the Court should exclude approximately 49 hours spent litigating Plaintiff's state court case. RGL notes that the state court granted summary disposition in its favor with respect to all of Plaintiff's claims.[4] Plaintiff's counsel argues that the time entries complained of by RGL relate to discovery that was used extensively in litigating the case before this Court.

The time RGL seeks to exclude encompasses the entirety of discovery in this case. Plaintiff could not have undertaken the necessarily fact-intensive litigation of her FMLA claim absent this discovery. Throughout this litigation, the parties referred extensively to deposition transcripts and other documents in support of their arguments. The depositions were conducted after the Complaint in this case was filed and certainly relate to Plaintiff's

---

[4] Plaintiff's state-court complaint asserted claims of discrimination based on race, sex, and national origin, as well as a claim by Plaintiff's spouse for loss of consortium.

claims in this case.[5] Plaintiff's interrogatories, which were served prior to the filing of this case, requested information relating to Plaintiff's FMLA leave and her termination after returning from leave. Although a few discovery tasks[6] were completed before Plaintiff filed this case, this work certainly would have been necessary at some point in this case. The Court has reviewed the time entries submitted by Plaintiff's counsel, and finds that they do not include any other costs that might be attributable to the state court action, such as time spent attending hearings in state court. The Court declines to exclude discovery costs from Plaintiff's award simply because she had previously filed a state court action based on her termination.

RGL contends that several of the time entries submitted by Plaintiff's counsel should be reduced by 75% to reflect that the Court granted RGL summary judgment with respect to three of Plaintiff's four claims in this action.[7] The Sixth Circuit has "'repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.'" *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 554 (6th Cir. 2008) (quoting *Deja Vu of Nashville v. Metro Gov't of Nashville and Davidson Cnty.*, 421 F.3d

---

[5] The exception is Plaintiff's deposition, which was held two days before the Complaint in this case was filed. It is practically certain, however, that Plaintiff would have been deposed in this case, as RGL relied on her deposition testimony extensively in its motion to dismiss, and RGL's counsel used this transcript in questioning Plaintiff at trial.

[6] These tasks included drafting interrogatories and requests for production, answering RGL's interrogatories and requests for production, and preparing Plaintiff for her deposition.

[7] The Complaint asserted claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and claims of interference and retaliation under the FMLA. In an Opinion and Order dated December 21, 2010, the Court granted summary judgment for RGL with respect to all of Plaintiff's claims except for the FMLA interference claim.

417, 423 (6th Cir. 2005)).

> [A] court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

*DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 672 (quoting *Deja Vu*, 421 F.3d at 423).

"'Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters.'" *Deja Vu*, 421 F.3d at 423 (quoting *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940). The Supreme Court has explained that in cases involving related legal theories,

> [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940.

Plaintiff asserted a number of legal theories upon which she sought to recover for the termination of her employment. Her claims were all based on a common core of facts, and the Court believes that it would be improper to treat these claims as distinct. Plaintiff obtained a successful result, even though she did not prevail on every legal theory raised in the Complaint. The Court does not believe that a reduction is warranted based on Plaintiff's success.

RGL next asserts that the Court should exclude approximately 13 hours spent on Plaintiff's unsuccessful motions. Specifically, RGL points to Plaintiff's motion for

8

summary judgment with respect to liability on the FMLA interference claim. The Court denied this motion in an Opinion and Order dated August 23, 2011. RGL relies on *Americans United for Separation of Church & State v. School District of the City of Grand Rapids*, 717 F. Supp. 488 (W.D. Mich. 1989), for the proposition that hours should be reduced for time spent on unsuccessful motions. The motion referred to in *Americans United*, however, was a post-judgment motion raising issues outside the scope of the plaintiffs' suit. *Id.* at 493. Although Plaintiff's motion for summary judgment was denied, she ultimately prevailed with respect to her claim. The Court does not believe that the hours relating to this motion should be excluded.

RGL objects to the inclusion of time spent responding to the Court's order to show cause why the case should not be dismissed for lack of prosecution. Plaintiff's counsel argues that this was brought about by RGL's failure to file an Answer to the Complaint, but it appears from Plaintiff's response to this order that the parties were simply mistaken about their obligations in preparing the case for trial. The Court does not believe that RGL should bear the related cost on its own, and therefore reduces Plaintiff's award by the time billed in connection with the Court's show cause order. The Court therefore finds that the total hours to be included in Plaintiff's reasonable attorney's fee is 247.27. Multiplying this total by the prevailing hourly rate of $232 provides a lodestar of $57,366.64. The Court does not believe that an adjustment from the lodestar is warranted, and therefore awards Plaintiff attorney's fees in this amount.

**D. Costs**

RGL objects to Plaintiff's inclusion of transcript costs of $1,873.02 as part of her bill

of costs in this action. RGL argues that these costs related to deposition transcripts, and there were no depositions taken in this action. Federal statute provides for the taxing of costs for transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). RGL cites *American Automotive Accessories v. Fishman*, 991 F. Supp. 995 (N.D. Ill. 1998), for the proposition that a party may not recover costs for a deposition taken in a related state court action.[8] *Fishman*, however, noted that the depositions at issue had been taken in the state court case before the plaintiff had filed the federal court action. The court therefore concluded that depositions were not necessarily obtained for use in the federal case. *Id.* at 997. Here, nearly all of the depositions were taken after this action was filed, and the deponents' testimony focused on claims raised by Plaintiff in this action. In support of their dispositive motions, the parties referred to the deposition testimony of Plaintiff, Leontyne Paige, Brandi Collins, John Powe, Ronald Butler, Claude Howard, Jr., and Yvonne Rayford. The parties also used the transcripts of testimony by Plaintiff, Butler, Howard, and Paige at trial during their questioning of witnesses. The Court is satisfied that these transcripts were "necessarily obtained for use in the case," and thus, the related costs are taxable under 28 U.S.C. § 1920(2). The Court is unaware of any specific use of the depositions of Chi-Meka Abernathy Jones and Karen Simon, and concludes that the costs relating to these two transcripts should be excluded from Plaintiff's award. The taxable transcript costs total $1,737.62. Plaintiff has also documented taxable interpreter's

---

[8] RGL also cites *Caudill v. Sears Transition Pay Plan*, No. 06-12866, 2011 U.S. Dist. LEXIS 45294 (E.D. Mich. Apr. 26, 2011), a case in which the court relied on *Fishman* in declining to tax costs for deposition transcripts.

fees of $233.00 and the clerk's filing fee of $350.00, for total costs of $2,320.62.  The Court awards Plaintiff costs in this amount.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that RGL's motion for sanctions is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff is awarded attorney's fees and costs in the amount of $59,687.26

                                             s/PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:
Lennox Emanuel, Esq.
Glenn D. Oliver, Esq.